STATE of Tennessee, Appellee,

v.

Tim James NORWORD, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 20, 1996.

---

Kenneth L. Miller, Cleveland, for Appellant.

Charles W. Burson, Attorney General and Reporter, Hunt S. Brown, Asst. Attorney General, Nashville, Jerry N. Estes, District Attorney General, Joe Rehyansky, Asst. District Attorney General, Cleveland, for Appellee.

## OPINION

PEAY, Judge.

The defendant was indicted for simple possession of less than one-half ounce of marijuana, possession of drug paraphernalia, and driving on a revoked license. He signed a waiver of his right to a jury trial, entering guilty pleas for all offenses. The defendant reserved a certified question of law regarding the trial court's denial of his motion to suppress all evidence obtained during an alleged illegal investigative stop. In this appeal as of right, the defendant asserts that, since the stop was made without a warrant and without reasonable suspicion, all resulting evidence should be suppressed. We agree. Accordingly, we reverse the defendant's conviction and dismiss the charges.

On July 25, 1994, Jimmy Smith, a deputy with the Bradley County Sheriff's Department, was on routine patrol. He recognized his brother's vehicle pass by, with an unknown driver at the wheel. In order to verify his brother's ownership of the vehicle, the officer "called the tag in to confirm it." Officer Smith, knowing that his brother did not often lend his car to others, proceeded to stop the vehicle. The officer testified that the sole reason he detained the defendant was because he observed a stranger driving his brother's automobile, not because of traffic violations.

During his testimony, the officer stated that as he approached the car the defendant immediately admitted that he had no driver's license. Officer Smith next saw a pack of rolling papers in the defendant's pocket and asked him to step out of the vehicle. According to the officer, the defendant voluntarily allowed him to examine the rolling papers as well as to search the vehicle. Upon further inspection, Officer Smith discovered marijuana cigarettes inside the pack. The defendant then told him that he was his brother's co-worker and had borrowed his car in order to purchase food to bring back to work.

Officer Smith's testimony deviates noticeably from his own affidavit of complaint. In the affidavit, the officer wrote that the defendant first "advised [me that] my brother loaned him the car. He then advised [me that] he had no driver's license." At the suspension hearing, Officer Smith, while admitting having written the affidavit, denied its veracity, stating, "That's not how it occurred." The defendant's own testimony corroborates the affidavit's sequence of events. According to the defendant, he first told Officer Smith that his brother let him borrow the car in order to bring back food to their workplace, and then the officer asked to see his driver's license.

On July 7, 1995, the defendant pled guilty to the three charges, reserving the right under Tennessee Rules of Criminal Procedure 37(b)(2)(i) to appeal a certified question of law, dispositive of his case. Specifically, the issue on appeal is whether Officer Jimmy Smith had either probable cause or reasonable suspicion to make an investigative stop of his brother's car which was driven in a lawful manner by an unknown individual.

"[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth Amendments of the United States Constitution], even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). In some circumstances, an officer may briefly detain a suspect without probable cause in order to investigate possible criminal activity. *Brown v. Texas,* 443 U.S.

47, 51, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357 (1979). In these situations, an investigatory stop is only permissible when a police officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense. has been or is about to be committed. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). In order to determine specific and articulable facts, this Court must consider the "totality of the circumstances." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981). Among the relevant elements to be considered are "objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." *Id.* at 418, 101 S.Ct. at 695.

█ The specific and articulable facts must be judged by an objective standard, not the subjective beliefs of the officer making the stop. *Cortez,* 449 U.S. at 417–18, 101 S.Ct. at 694–95. In *State v. Johnson,* we considered a police officer who had stopped a Cadillac after noticing that its rear vent window was broken. *State v. Joe A. Johnson,* No. 01–C–01–9003–CR–00061, Davidson County, 1990 WL 108375 (Tenn.Crim.App. filed August 2, 1990, at Nashville). The officer testified that he had observed numerous stolen Cadillacs with these broken windows. As a result, he had formed a subjective conclusion that "any vehicle with a broken rear vent window was probably stolen." *Id.* This Court deemed such a subjective supposition inadequate justification to stop the vehicle. Similarly, Officer Smith only surmised the possibility of foul play in seeing another person driving his brother's car. He had no objective affirmation of his suspicion.

█ In its brief, the State favors using the balancing test found in *State v. Pulley* which weighs the "gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." *State v. Pulley,* 863 S.W.2d 29, 30 (Tenn.1993). The State insists that Officer Smith's investigatory stop passes muster given: "(1) the serious risk that his brother's car being driven by a stranger, might have been stolen; (2) the small amount of time and few steps necessary to verify the driver's right to be in the car; and (3) the minimal inconvenience the stop would have on the driver, as judged by the brief amount of time necessary to contact his brother to verify the defendant's story." However, the brevity of the stop does not rectify the constitutional violation. Officer Smith simply lacked reasonable suspicion to stop the defendant.

In addition, the *Pulley* court utilized this balancing test in a much different context. In that case, a police officer received an informant's tip that defendant Pulley was brandishing a shotgun and threatening to shoot bystanders. The officer recognized Pulley inside a moving vehicle and detained him. *Pulley,* 863 S.W.2d at 29. Our Supreme Court found that curtailing an imminent threat to human life constituted a compelling enough interest to merit an investigatory stop. *Id.* at 34. Comparatively, the danger involved in the property crime entailed here does not remotely equate *Pulley* 's immediate risk to human life with a dangerous weapon. Here, individual privacy trumps public concern.

Even though the strange driver may have "looked suspicious", Officer Smith was unable to point to any facts supporting that conclusion. *See Brown,* 443 U.S. at 52, 99 S.Ct. at 2641. The officer knew that his brother did not habitually loan his vehicle to others, but had not received any indication of unlawful acts. The defendant was violating no traffic law. Officer Smith's actions were no doubt geared toward the laudable goal of crime prevention. Nevertheless, as soon as he stopped the defendant with no specific objective basis for suspecting criminal involvement, he stretched the Fourth Amendment boundaries too far. "When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits." *Id.* A citizen's reasonable expectation of privacy cannot be vulnerable to arbitrary invasions simply "at the unfettered discretion of officers in the field." *Brown,* 443 U.S. at 51, 99 S.Ct. at 2640. In the absence of ascertainable, objective facts, of criminal wrongdoing, the balance tips in favor of freedom from police interference,

insuring personal security and privacy. *Id.* at 52, 99 S.Ct. at 2641.

 In the alternative, the defendant asks this Court to find that, even if there was initial reasonable suspicion for the officer to stop the defendant, upon hearing the defendant's explanation that the automobile had been loaned to him, Officer Smith had no right to request his driver's license. This issue is waived. No issues beyond the scope of the certified question will be considered on appeal. *State v. Preston,* 759 S.W.2d 647, 650 (Tenn.1988). Notwithstanding the waiver, however, the defendant raises another meritorious issue. As provided in T.C.A. § 40–7–103(b):

> Unless a law enforcement officer has probable cause to believe that an offense has been committed, no such officer, except members of the Tennessee highway patrol ..., shall have the authority to stop a motor vehicle for the sole purpose of examining or checking the operator's license of the driver of such vehicle.

This constitutes unreasonable conduct according to Fourth Amendment standards. *Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401.

*See also State v. Westbrooks,* 594 S.W.2d 741, 743 (Tenn.Cr.App.1979) ("To allow unfettered discretion in the State to arbitrarily seize anyone traveling upon the public highways strikes at the very heart of the protections guaranteed United States citizens by the Fourth Amendment.")

We find that the evidence contained in the record preponderates against the trial court's denial of the defendant's motion to suppress the evidence related to the unlawful investigatory stop. Accordingly, the order of the trial court denying the defendant's motion to suppress is reversed, the evidence is suppressed, the convictions as entered by the trial court are reversed, and the charges are dismissed.

SMITH, J., and BYERS, Senior Judge, concur.