# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## JULY SESSION, 1997

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9701-CR-00037** |
| | ) | |
| Appellee, | ) | **CARTER COUNTY** |
| | ) | |
| | ) | **HON. LYNN W. BROWN, JUDGE** |
| **V.** | ) | |
| | ) | |
| **TERRY FREEMAN,** | ) | **(CERTIFIED QUESTION OF LAW** |
| | ) | **POSSESSION OF SCHEDULE VI** |
| Appellant. | ) | **DRUGS WITH INTENT TO SELL)** |


FOR THE APPELLANT:                      FOR THE APPELLEE:

**LAURA RULE HENDRICKS**                 **JOHN KNOX WALKUP**
Attorney at Law                          Attorney General & Reporter
606 West Main Street, Suite 350
P.O. Box 84                              **SANDY COPOUS PATRICK**
Knoxville, TN  37901-0084                Assistant Attorney General
(On Appeal)                              2nd Floor, Cordell Hull Building
                                         425 Fifth Avenue North
                                         Nashville, TN  37243-0943


**DAVID F. BAUTISTA**                    **DAVID E. CROCKETT**
District Public Defender                 District Attorney General


**ROBERT Y. OAKS**                       **KENNETH C. BALDWIN**
Assistant Public Defender                Assistant District Attorney General
Main Courthouse                          Carter County Courthouse Annex
Elizabethton, TN  37643                  Elizabethton, TN  37643
(At Trial)


OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# **OPINION**

Pursuant to a negotiated plea agreement, the Defendant, Terry Freeman, pled guilty in the Criminal Court of Carter County to the Class E felony offense of possession of marijuana with intent to sell. The trial court denied the Defendant's motion to suppress evidence. With the consent of the State and the trial court, Defendant reserved the right to appeal a certified question of law which is dispositive of the case. See T.R.A.P. 3(b)(2). The precise question of law certified in this appeal is as follows: "Whether the stop of the Defendant's vehicle was made with reasonable suspicion based on articulable facts under the Tennessee and United States Constitutions." We affirm the judgment of the trial court.

On September 19, 1995, Detectives Grayson Winters and Ronnie McClure received information from a confidential informant that Terry Freeman would be leaving his residence at 227 South Hills around 1:00 p.m. or 2:00 p.m. to go to his work at Red Lobster. The informant also stated that Defendant would be driving a Silver Toyota vehicle and would have marijuana in his possession. Further, the informant advised the officers that Defendant had a revoked driver's license.

The officers went to the area of the address on September 19 after checking Defendant's driver's license history and confirming that it was in a revoked status. They observed the described vehicle at the residence and stayed in the area for a brief period of time, but did not see the Defendant leave.

The officers did not know the confidential informant prior to September 19 and obviously had never used information from the person on any prior occasion. On September 20, 1995, the officers again went to Defendant's residence between 1:00 and 2:00 p.m. They saw the described silver Toyota leave the residence at 227 South Hills, but could not positively identify Defendant because all that they could see was the back of the driver as the vehicle pulled out.

Detective Winters testified that they immediately began following the vehicle, radioed to the dispatcher for a check on the license plate number of the car, and were informed that the vehicle was registered to Defendant. The officers then stopped the Defendant. This stop by the officers is the specific action complained of by Defendant in this appeal.

In this court, the Defendant principally relies upon our court's decisions in State v. Coleman, 791 S.W.2d 504 (Tenn. Crim. App. 1989) and State v. Norword, 938 S.W.2d 23 (Tenn. Crim. App. 1996). In Norword, our court recognized that stopping an automobile and detaining the occupants is a seizure within the meaning of the 4th and 14th Amendments of the United States Constitution "even though the purpose of the stop is limited and the resulting detention quite brief." 938 S.W.2d at 24, quoting from Delaware v. Prouse, 440 U.S. 648, 653 (1979).

Furthermore, our court in Norword specifically held:

> In some circumstances, an officer may briefly detain a suspect without probable cause in order to investigate possible criminal activity. Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640-41, 61 L.Ed.2d 357 (1979). In these situations, an investigatory stop is

only permissible when a police officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968). In order to determine specific and articulable facts, this Court must consider the "totality of the circumstances." United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621 (1981).

Norword, 938 S.W.2d at 24-25.

In Norword, the defendant was operating a vehicle which belonged to the arresting officer's brother. The officer knew that his brother did not regularly loan the vehicle. While on routine patrol, the officer saw the car being driven by a stranger and based upon this "suspicious" circumstance, the officer stopped the defendant and ultimately found marijuana, drug paraphernalia, and that the defendant was driving the vehicle with a revoked license. Our court ruled that the police officer had no specific objective basis for suspecting criminal involvement by the defendant and that therefore the stop violated the defendant's rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. Norword, 938 S.W.2d at 25.

In Coleman, our court affirmed the judgment of the trial court granting the defendant's motion to suppress evidence seized as a result of an investigatory stop by a law enforcement officer. In that case, the defendant was stopped for investigation based upon information received from a confidential informant who had never before been used as a source of information in any police investigation and did not reveal to the officer the basis of his or her knowledge concerning the information. Our court specifically noted that the stop was not made upon the officer's own observations. In Coleman, the grounds for

justifying the investigatory stop were related solely to the information provided to law enforcement officers by the confidential informant. Our court held that even though the vehicle was registered in the name of a person who had the same first name as provided by the informant, that this was not enough to provide reasonable and articulable suspicion to justify the stop and detention.

However, the facts in the case sub judice are more similar to the facts involved in State v. Watkins, 827 S.W.2d 293 (Tenn. 1992) than the facts in Norword and Coleman. In Watkins, one of the arresting officers had personal knowledge that there was a capias outstanding for Watkins' arrest. Other police officers had informed the arresting officer that defendant drove a black Cadillac vehicle which had the words "The Duke" inscribed on the car. On the date of the arrest, the officer and his partner were parked when they observed the particular black Cadillac drive by them. Due to the outstanding capias, the officers decided to stop the vehicle and "investigate the identity of the driver." Watkins, 827 S.W.2d at 294.

After the defendant identified himself at the request of the arresting officer, a call was made to the police dispatcher to verify the capias, and defendant was then placed under arrest. The defendant argued on appeal that the seizure of his vehicle by way of the investigatory stop was a violation of his rights guaranteed by the Fourth Amendment to the United States Constitution.

Noting that a court must consider "rational inferences and deductions" that a police officer may draw from the facts and circumstances known to him, our supreme court rejected the defendant's argument and held:

Considering the totality of these circumstances, we find that the police officers had the required reasonable suspicion, supported by specific and articulable facts, that the defendant was the driver of the vehicle and that he was the person wanted on the outstanding capias.

Watkins, 827 S.W.2d at 295.

In the case sub judice, the officers knew from verified information that the Defendant's driver's license was in a revoked status. They observed a white male driving the vehicle registered in Defendant's name on a public road. Under Watkins, there were sufficient specific and articulable facts to make an investigatory stop to determine the identity of the driver. Even if the officers thought that they had enough information to base the stop solely upon the information obtained from the confidential informant (which they did not since the neither the basis of knowledge nor the veracity of the informant is shown in the record), the stop is still legal if it is based on reasonable grounds other than those relied upon by the officers. See State v. Smith, 787 S.W.2d 34, 35 (Tenn. Crim. App. 1989).

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, Judge


CONCUR:

(See Separate Concurring Opinion) ____
DAVID H. WELLES, Judge


(See Separate Concurring Opinion) ____
JOHN K. BYERS, Senior Judge

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JULY SESSION, 1997

FILED

October 22, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,      )      C.C.A. NO. 03C01-9701-CR-00037
                         )
        Appellee,        )
                         )
                         )      CARTER COUNTY
VS.                      )
                         )      HON. LYNN W. BROWN,
TERRY FREEMAN,           )      JUDGE
                         )
        Appellant.       )      (Certified Question of Law
                         )      Possession of Schedule VI
                         )      Drugs with Intent to Sell)

## CONCURRING OPINION

I concur in the opinion of my colleague, Judge Woodall. I agree that, under our supreme court's holding in State v. Watkins, 827 S.W.2d 293 (Tenn. 1992), the police officers in the present case had the required reasonable suspicion based on specific and articulable facts to make an investigatory stop of the Defendant. I write separately, however, to express my concern about a significant difference between Watkins and the case sub judice.

As Judge Woodall points out, an investigatory detention, although less intrusive than a full-blown arrest, is nevertheless subject to the constitutional protection of the Fourth Amendment against "unreasonable searches and seizures." Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Interactions between the police and the public that constitute seizures but not arrests are judged by their reasonableness rather than by a showing of probable cause. Id. The reasonableness of the intrusion is "judged by weighing the gravity of the public concern, the degree to which the seizure advances that

concern, and the severity of the intrusion into individual privacy." State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993) (citing Brown v. Texas, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)).

The law is well settled in Tennessee that an investigative detention requires only a showing of reasonable suspicion rather than probable cause. See, e.g., Watkins, 827 S.W.2d at 294. Reasonable suspicion must be based on specific and articulable facts that a criminal offense has been or is about to be committed. Terry, 392 U.S. at 21, 88 S.Ct. at 1880; Pulley, 863 S.W.2d at 30; Watkins, 827 S.W.2d at 294; State v. Seaton, 914 S.W.2d 129, 131 (Tenn. Crim. App. 1995). In evaluating whether reasonable suspicion is based on specific and articulable facts, we must consider the totality of the circumstances, including the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Watkins, 827 S.W.2d at 294 (citing United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)); see also Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); Pulley, 863 S.W.2d at 31. We must also consider the rational inferences and deductions that a trained police officer may draw from the circumstances. Watkins, 827 S.W.2d at 294 (citing Terry, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906).

In Watkins, one of the police officers had personal knowledge that a capias was outstanding for the defendant's arrest. He had also learned from other officers that the defendant frequently drove a black Cadillac which had the words "The Duke" written on the vehicle. The car was registered to the defendant's

mother. On the day in question, the officer and his partner observed the black Cadillac drive by them. Because of the outstanding capias, the officers decided to stop the vehicle and investigate the identity of the driver. After the stop of the vehicle, the defendant identified himself to the officers. They confirmed with the police dispatcher that there was an outstanding capias for the defendant's arrest and then placed the defendant under arrest. Watkins, 827 S.W.2d at 294-95.

On appeal, our supreme court rejected the defendant's argument that the investigatory stop of the black Cadillac was not supported by reasonable suspicion. In so doing, the court held as follows:

> Considering the totality of these circumstances, we find that the police officers had the required reasonable suspicion, supported by specific and articulable facts, that the defendant was the driver of the vehicle and that he was the person wanted on the outstanding capias.

Id. at 295 (emphasis added). Thus, the court concluded that the defendant had not been subjected to an unconstitutional stop.

I agree with Judge Woodall that the Watkins holding controls the case at bar. In the present case, the officers knew that the Defendant's driver's license was in a revoked status. One of the officers had arrested the Defendant in 1987 and apparently knew that he was a white male. The officers observed a white male driving a vehicle registered to the Defendant. Prior to stopping the vehicle, however, the officers did not know the identity of the driver.

From these facts, I believe that the constitutionality of the stop in the case sub judice turns on the question of whether the officers had a reasonable suspicion that the driver of the vehicle was the Defendant. Under similar

circumstances, the <u>Watkins</u> court stated that the officers in that case had sufficient reasonable suspicion "that the defendant was the driver of the vehicle." <u>Watkins</u>, 827 S.W.2d at 295. Given that language from <u>Watkins</u>, I can only conclude that the officers in the case at bar had a reasonable suspicion supported by specific and articulable facts that the Defendant was the driver of the vehicle that they stopped. Accordingly, I agree with Judge Woodall that the stop of the Defendant's vehicle was a constitutionally permissible investigatory stop.

I believe, however, that the existence of a capias for the defendant in <u>Watkins</u> is highly significant. In my judgment, the existence of a capias for the defendant in <u>Watkins</u> heightens the gravity of the public concern, one of the factors courts must weigh to evaluate the reasonableness of an investigatory stop. <u>See</u> <u>Pulley</u>, 863 S.W.2d at 30. The heightened gravity of the public concern involved in <u>Watkins</u> tips the balance more in favor of the stop being reasonable than in the case <u>sub</u> <u>judice</u>, where there was no capias for the Defendant. Furthermore, I believe that the actions of the officers in <u>Watkins</u>, who stopped the defendant because of the outstanding capias, were not solely investigatory but were also aimed at ensuring the efficient administration of the criminal justice system by taking the defendant into custody. In contrast, the actions of the officers in the present case were purely investigatory, seeking to confirm information about possible traffic and drug offenses.

The <u>Watkins</u> court did not, however, note any special significance for the outstanding capias in the analysis of the reasonableness of the stop. Instead, the plain language of the opinion clearly and simply states that the officers had

-11-

reasonable suspicion that the defendant was the driver of the vehicle. Given that language, I feel constrained by the holding in <u>Watkins</u> to conclude that the investigatory stop of the Defendant in the case at bar was supported by reasonable suspicion. I therefore concur in the opinion of Judge Woodall.

_____
DAVID H. WELLES, JUDGE

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JULY 1997 SESSION

FILED

October 22, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9701-CR-00037 |
| | ) | |
| Appellee | ) | CARTER COUNTY |
| | ) | |
| v. | ) | HON. LYNN W. BROWN, |
| | ) | JUDGE |
| TERRY FREEMAN, | ) | |
| | ) | (Certified Question of Law |
| Defendant/Appellant | ) | Possession of Schedule VI |
| | ) | Drugs with Intent to Sell) |

CONCURRING OPINION

I concur in the Concurring Opinion written by Judge Welles.

_____

John K. Byers, Senior Judge