IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2011

## STATE OF TENNESSEE v. STEVEN DANIEL PACK

**Direct Appeal from the Circuit Court for Coffee County**
No. 37,359     Walter Kurtz, Judge

---

**No. M2010-02465-CCA-R3-CD - Filed July 26, 2011**

---

The Defendant-Appellant, Steven Daniel Pack, pled guilty in the Circuit Court of Coffee County to driving under the influence, third offense, a Class A misdemeanor, and driving on a revoked license, a Class B misdemeanor. He was sentenced to eleven months and twenty-nine days for driving under the influence, third offense, all of which was suspended after service of 180 days in confinement. In regard to the driving on a revoked license conviction, Pack was sentenced to six months, all of which was suspended after service of 60 days in confinement. These sentences were to be served consecutively. Pursuant to Rule 37 of the Tennessee Rules of Criminal Procedure, Pack reserved as a certified question of law whether there was reasonable suspicion to support the stop and detention of the defendant as required by the 4th Amendment of the U.S. Constitution and Article 1 Section 7 of the Tennessee Constitution. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

James Threet, Manchester, Tennessee, for the Defendant-Appellant, Steven Daniel Pack.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Michael Payne, District Attorney General; and Marla Holloway, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

Pack was charged with driving under the influence third offense, driving with a revoked license, violation of implied consent, and indecent exposure. These charges stemmed from an investigatory stop by Officer Sam Campbell of the Tullahoma Police Department. Pack filed a motion to suppress, in which he claimed the investigatory stop was

unconstitutional. Pack argued that Officer Campbell lacked a reasonable suspicion that Pack violated the law. Following a suppression hearing, the trial court denied the motion. Pack subsequently pled guilty to driving under the influence, third offense, and driving with a revoked license. As part of the plea agreement, Pack reserved for appeal a certified question of law challenging the legal basis for the stop.

**Suppression Hearing**. Officer Campbell testified that on the night of April 17, 2009, the night of the offense, he was on patrol in his police vehicle. The police vehicle was parked off of Volney Street, which was "a back side street that goes behind some business establishments" and intersected with South Anderson Street. Officer Campbell said his police vehicle faced east towards South Anderson Street. The headlights of the police vehicle were initially turned off. Around midnight, Officer Campbell saw Pack's vehicle traveling on South Anderson Street. Pack "made a hard turn onto Volney and turned onto the side of the road[.]" Officer Campbell said Pack's vehicle was parked facing east on Volney Street. Officer Campbell saw Pack exit his vehicle and begin to urinate on the road.

Officer Campbell stated, "Pack stepped out of his vehicle and faced west towards South Anderson, towards my direction." Officer Campbell testified that he saw Pack's genitals, turned on his headlights, and drove toward Pack. Officer Campbell said he activated his blue lights when he "observed Mr. Pack trying to turn around and enter his vehicle." Officer Campbell then initiated the investigatory stop. He saw a large puddle of urine next to the driver's side door of Pack's vehicle. The video of the investigatory stop taken from the police vehicle that night was introduced as an exhibit.

On cross-examination, Officer Campbell testified that he could tell Pack was urinating before he turned on the headlights. Once the headlights were turned on, Officer Campbell said he "could see [Pack] was actually urinating." Officer Campbell said Pack first noticed the police vehicle because of the headlights. Pack "immediately turned around and sat down into his vehicle." Officer Campbell testified that Pack had urine on his pants and in his vehicle. Officer Campbell estimated that Pack's vehicle was parked six to twelve feet from a street light. When Pack first exited his vehicle, he walked towards the street light. Officer Campbell said Pack "was in the light when he was urinating." Officer Campbell testified that Pack was not driving erratically before he parked on Volney Street.

Following the proof at the hearing, the trial court denied the motion to suppress. The trial court determined that Officer Campbell had a reasonable suspicion that Pack violated the law by indecent exposure and public urination.

**ANALYSIS**

**I. Certified Question Presented**. The judgment order sets forth the following certified question of law:

> [W]as the stop and detention of the defendant lawful under the 4th Amendment of the U.S. Constitution and Art. 1 Sect. 7 of the State Constitution[?] The stop and the detention of the defendant was warrantless there [sic] the State must establish reasonable suspicion for the police officers [sic] actions.

Pack claims Officer Campbell initiated the investigatory stop before there was a reasonable suspicion of criminal activity. Pack contends the testimony of Officer Campbell was not credible. He argues that the video of the investigatory stop establishes that Officer Campbell could not have seen the criminal activity before he activated the blue lights. In response, the State argues that the trial court properly denied the motion to suppress. The State contends the trial court's decision was adequately supported by the testimony of Officer Campbell. Upon review, we agree with the State.

**Standard of Review**. The standard of review applicable to suppression issues involves a mixed question of law and fact. State v. Garcia, 123 S.W.3d 335, 342 (Tenn. 2003). "[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Cox, 171 S.W.3d 174, 178 (Tenn. 2005) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). The Tennessee Supreme Court explained this standard in State v. Odom:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

Odom, 928 S.W.2d at 23.

**Investigatory Stop of Vehicle**. The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect against unreasonable searches and seizures. The stop of a vehicle and the detention of its occupants constitutes a seizure within the meaning of both the Fourth Amendment to the United States and article I, section 7 of the Tennessee Constitution. Whren v. United States, 517 U.S. 806, 809-10 (1996); State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

A warrantless search or seizure "is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). A warrant is not required for an investigatory stop if the officer has "a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). Probable cause is not required for an investigatory stop. State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989) (citing Terry, 391 U.S. at 27 and Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979)).

The Tennessee Supreme Court has stated that a "[r]easonable suspicion is a less demanding standard than probable cause." Bridges, 963 S.W.2d at 492 (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). Reasonable suspicion for an investigatory stop will be found to exist only when the events which preceded the stop would cause an objectively reasonable police officer to suspect criminal activity on the part of the individual stopped. State v. Levitt, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001); State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). The likelihood of criminal activity required for reasonable suspicion is not as great as that required for probable cause, and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. United States v. Sokolow, 490 U.S. 1, 7 (1989); see also State v. Keith, 978 S.W.2d 861, 867 (Tenn. 1998).

In this case, the evidence does not preponderate against the denial of the motion to suppress. The trial court found that Officer Campbell had reasonable suspicion that Pack violated the law through indecent exposure and public urination. The record supports this determination. Officer Campbell testified that he watched Pack get out of his vehicle and urinate on a public road. Officer Campbell said Pack's genitals were exposed. Officer Campbell stated that he did not initiate the investigatory stop until after he observed the public urination and the indecent exposure. The testimony of Officer Campbell established that he had a reasonable suspicion that Pack committed an offense.

Relying primarily on State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000), Pack asks this court to disregard Officer Campbell's testimony based on the video of the investigatory stop. Pack contends the video shows Officer Campbell was unable to see the criminal activity before he activated the blue lights. As discussed above, the trial court is entrusted with resolving all conflicts in the evidence. See Odom, 928 S.W.2d at 23. This court is to uphold the trial court's findings if they are supported by the greater weight of the evidence. Id. In viewing the video, we conclude the greater weight of the evidence supports the trial court's finding that the stop was initiated because Pack was "engaged in [] public urination." Furthermore, unlike Binette, Officer Campbell presented live testimony regarding his observations prior to the investigatory stop. We acknowledge that the video is dark and that

-4-

Pack's visibility in the video is limited. We cannot state, however, that Officer Campbell was unable to see Pack urinate before he activated the blue lights. The video shows the police vehicle parked across the street from Pack's vehicle at a distance. Pack's vehicle is parked close to the street separating the two vehicles. In the video, Officer Campbell turns on his headlights and drives toward Pack's vehicle. The headlights shine directly at Pack's vehicle and the blue lights are activated when the police vehicle crosses the street. At that point, the police vehicle is at a close proximity to Pack's vehicle. We are not persuaded that Officer Campbell was unable to see the criminal activity before he activated the blue lights. We hold that the investigatory stop was constitutional, and therefore the trial court properly denied the motion to suppress. Pack is not entitled to relief.

## CONCLUSION

Based on the foregoing reasons, we affirm the judgments of the trial court.


_____
CAMILLE R. McMULLEN, JUDGE