# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs June 7, 2011

## STATE OF TENNESSEE v. DONALD SMITH

**Direct Appeal from the Criminal Court for Shelby County**
**No. 09-03243     W. Mark Ward, Judge**

**No. W2010-01850-CCA-R3-CD  - Filed December 12, 2011**

The appellant, Donald Smith, pled guilty in the Shelby County Criminal Court to driving under the influence of an intoxicant (DUI), reserving the following certified question of law: "Whether the [appellant's] detention at [the] scene of a traffic stop was unreasonably prolonged such that it violated . . . Article I, Section 7 of the Tennessee Constitution and/or the Fourth Amendment to the United States Constitution."  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

N. Craig Brigtsen, III, and Terry D. Smart (at trial and on appeal), and Jerry Smart (at trial), Memphis, Tennessee, for the appellant, Donald Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Tom Hoover and Susanna Shea, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## I.  Factual Background

The Shelby County Grand Jury returned a multi-count indictment charging the appellant with DUI, DUI with a blood alcohol content over .08, and reckless driving. Subsequently, the appellant filed a motion to suppress, alleging that the traffic stop of the appellant was not supported by reasonable suspicion and was unreasonably prolonged.  The appellant filed an amended motion to suppress, alleging that a breath test conducted at the

police station was illegal because it occurred after the appellant requested counsel.[1]

At the suppression hearing, Bartlett City Police Officer Morrie Lee Douglas, Jr., testified that at approximately 7:00 p.m. on November 22, 2008, he was on Haynes Road facing north toward Memphis Arlington. Initially, he heard "the revving of [an] engine." Officer Douglas then observed the appellant in a Ford pickup truck, driving east across Highway 70 on Memphis Arlington. The appellant's "engine was revved to the point where he was increasing his speed." Using radar, Officer Douglas discerned that the appellant was driving fifty miles per hour in a thirty-five miles per hour speed zone. Officer Douglas pursued the appellant. As Officer Douglas drove over a hill, he saw the appellant "proceed southbound again rapidly increasing speed. He went over three lanes of traffic into the inside lane, came up on a vehicle that was in front of him, swerved out to avoid that vehicle. There was another vehicle in the middle lane. He swerved back into the inside lane."

Officer Douglas activated his emergency equipment to stop the appellant for speeding. About a quarter of a mile after Officer Douglas initiated the stop, the appellant pulled over and parked. Officer Douglas also parked and approached the appellant's truck. He told the appellant the reason for the stop. Officer Douglas asked what the appellant had been doing that night, and the appellant responded that he had been at a football game. Officer Douglas asked the appellant if he had anything to drink, and the appellant said no. Officer Douglas did not believe the appellant because he smelled a "slight odor of an intoxicant on" the appellant. Officer Douglas returned to his patrol car and called for backup. Officer Douglas explained that he intended to determine the appellant's level of intoxication before releasing him and that he never told the appellant that "he was going to be cited for speeding and let go."

After calling for backup, Officer Douglas started writing a speeding ticket. He said that the process of getting information from the police station and completing the citation took "[a]nywhere between three to five to five to eight minutes."

Officer Douglas testified that his backup, Officer Mark Bennington, arrived within fifteen minutes of being called. Officer Bennington came to Officer Douglas' car, and Officer Douglas told him that he had smelled an intoxicant on the appellant. Officer Douglas explained that he wanted Officer Bennington to speak to the appellant and form an opinion as to the appellant's intoxication. After Officer Bennington spoke with the appellant, he told Officer Douglas that he smelled a "moderate" odor of alcohol on the appellant.

Officer Douglas explained that he originally thought the smell of alcohol was weak

---

[1] On appeal, the appellant raises no issues about the breath test.

but "[w]hen I went back to him, I could smell it a little bit stronger." He said that was enough to "raise [his] suspicions" about the appellant's intoxication. The officers asked the appellant to step out of the truck to perform field sobriety tests. The appellant consented to the tests and opened the truck's door, dropping his keys on the pavement. When the appellant tried to pick up his keys, he stumbled and "was a little unsteady on his feet." Officer Douglas said that the appellant performed poorly on three field sobriety tests. At that point, Officer Douglas arrested the appellant for DUI and took him to police headquarters. Officer Douglas informed the appellant of the implied consent law and had him breathe into a breathalyzer, which revealed that the appellant's blood alcohol content was .116. Officer Douglas said that he gave the appellant "another opportunity to do a test" at the police station and that the appellant "did better on that test."

At the conclusion of the suppression hearing, the court found that reasonable suspicion justified the traffic stop for speeding and that the stop was not unduly lengthened by the investigation of the appellant's intoxication. The court said that the weak smell of alcohol and the appellant's excessive speed justified the officer's reasonable suspicion of the appellant's intoxication. The court stated that the approximately ten-minute detention was reasonable to investigate the officer's suspicions. The court said, "To detain someone for 10 minutes, I think that's just good police work."

The appellant pled guilty to DUI, receiving a sentence of eleven months and twenty-nine days. As a condition of his plea, the appellant reserved the following certified question:

> Whether the [appellant's] detention at [the] scene of a traffic stop was unreasonably prolonged such that it violated . . . Article I, Section 7 of the Tennessee Constitution and/or the Fourth Amendment to the United States Constitution.

## II. Analysis

Initially, we note that Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure provides that an appellant may appeal from any judgment of conviction occurring as a result of a guilty plea if the following requirements are met:

> (A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review;
>
> (B) The question of law must be stated in the judgment or

document so as to identify clearly the scope and limits of the
legal issue reserved;

(C)  The judgment or document must reflect that the certified
question was expressly reserved with the consent of the state
and the trial judge; and

(D)  The judgment or document must reflect that the defendant,
the state, and the trial judge are of the opinion that the certified
question is dispositive of the case.

See also State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988).  In the instant case, the
appellant reserved his certified question by including on the judgment of conviction a
reference to an order which sets out the issue and provides that the issue is dispositive.  We
agree that the issue is dispositive of the case.  Accordingly, we conclude that the appellant
properly reserved the certified question.

Turning to the certified question itself, we note that in reviewing a trial court's
determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses,
the weight and value of the evidence, and resolution of conflicts in the evidence are matters
entrusted to the trial judge as the trier of fact."  State v. Odom, 928 S.W.2d 18, 23 (Tenn.
1996).  Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless
the evidence preponderates otherwise."  Id. Nevertheless, appellate courts will review the
trial court's application of law to the facts purely de novo.  See State v. Walton, 41 S.W.3d
75, 81 (Tenn. 2001).  Furthermore, the State, as the prevailing party, is "entitled to the
strongest legitimate view of the evidence adduced at the suppression hearing as well as all
reasonable and legitimate inferences that may be drawn from that evidence."  Odom, 928
S.W.2d at 23.

Initially, we note that both the Fourth Amendment to the United States Constitution
and article I, section 7 of the Tennessee Constitution provide protection for citizens against
"unreasonable searches and seizures."  Generally, a warrantless search or seizure is
considered presumptively unreasonable, thus violative of constitutional protections.  See
State v. Walker, 12 S.W.3d 460, 467 (Tenn. 2000); see also State v. Hicks, 55 S.W.3d 515,
527 (Tenn. 2001).  "Because stopping an automobile without a warrant and detaining its
occupants unquestionably constitutes a seizure, the State . . . carrie[s] the burden of
demonstrating the applicability of an exception to the warrant requirement."  State v. Harris,
280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

The United States Supreme Court announced one such exception to the warrant

requirement in Terry v. Ohio, 392 U.S. 1, 21 (1968), holding that a law enforcement officer may conduct a brief investigatory stop of an individual if the officer has a reasonable suspicion based upon specific and articulable facts that a criminal offense has been, is being, or is about to be committed. See also State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998). This standard also applies to the investigatory stop of a vehicle. Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). In other words, a law enforcement officer may stop a vehicle if the officer possesses a reasonable suspicion supported by specific and articulable facts that an offense has been, is being, or is about to be committed. Watkins, 827 S.W.2d at 294.

The Supreme Court has observed that "[a]rticulating precisely what 'reasonable suspicion' . . . mean[s] is not possible." Ornelas v. United States, 517 U.S. 690, 695 (1996); see also State v. Smith, 21 S.W.3d 251, 256 (Tenn. Crim. App. 1999). "Reasonable suspicion is a particularized and objective basis for suspecting the subject of a stop of criminal activity." State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (citing Ornelas, 517 U.S. at 696). "The specific and articulable facts must be judged by an objective standard, not the subjective beliefs of the officer making the stop." State v. Norwood, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996) (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Accordingly, in evaluating the validity of an investigatory stop, a court must consider the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8 (1989); Watkins, 827 S.W.2d at 294. These circumstances include, but are not limited to, "[the officer's] objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him." Watkins, 827 S.W.2d at 294 (citation omitted).

In the instant case, the appellant does not challenge the validity of the initial stop, and the record is clear that Officer Douglas had probable cause to stop the appellant for violating the speed limit. See State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005) (stating that, generally, a traffic stop based upon probable cause to believe a traffic violation has occurred is constitutionally reasonable). However, the appellant contends that "he was detained beyond the time necessary to accomplish the initial purpose of the traffic stop for speeding." He further contends that his prolonged detention was not supported by reasonable suspicion because the officer had, at most, smelled a "weak" odor of alcohol.

During an investigatory traffic stop, an officer's actions must reasonably relate to the circumstances prompting the stop. State v. Troxell, 78 S.W.3d 866, 871 (Tenn. 2002). Additionally, the detention must not last longer than needed to effectuate the reason underlying the stop, with the officer "'diligently pursu[ing] a means of investigation that [is] likely to confirm or dispel their suspicions quickly.'" Id. (quoting State v. Simpson, 968

S.W.2d 776, 783 (Tenn. 1998)).  Further detention will be justified if, during a valid stop, law enforcement officers develop a reasonable suspicion that the individual was engaged in other criminal activity.  See United States v. Erwin, 155 F.3d 818, 822 (6th Cir. 1998).

The appellant contends that Officer Douglas needed "reasonable grounds" to extend the stop.  As the trial court noted, Officer Douglas was permitted to extend the duration of the traffic stop upon reasonable suspicion that the appellant was driving while intoxicated. "[R]easonable suspicion can be established with information that is different in quality or content than that required to establish probable cause and can arise from information that is less reliable than that required to show probable cause." State v. Hanning, 296 S.W.3d 44, 49 (Tenn. 2009) (internal quotations omitted).  Put another way, "probable cause means a fair probability that contraband or evidence of a crime will be found and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause." State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997) (internal quotations and emphasis omitted).

This court has previously found that, while insufficient to establish probable cause to arrest for DUI, the smell of alcohol on a driver, even if not strong, constituted reasonable suspicion to justify a brief detention to ascertain a driver's level of sobriety.  See State v. Jashua Shannon Sides, No. E2000-01422-CCA-R3-CD, 2001 WL 523375, at *3 (Tenn. Crim. App. at Knoxville, May 16, 2001); see also State v. Ralph Wilhoite, No. E2010-00352-CCA-R3-CD, 2011 WL 1630684, at *4 (Tenn. Crim. App. at Knoxville, Apr. 26, 2011).  In the instant case, the trial court found that the detention of the appellant, which lasted approximately ten minutes, was a reasonable length of time for another officer to arrive to assist Officer Douglas in administering field sobriety tests.  The evidence does not preponderate against the trial court's ruling that the stop was not " unreasonably prolonged." In fact, the trial court found that the detention was "just good police work."

### III.  Conclusion

Finding that the trial court did not err in denying the appellant's motion to suppress, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-6-