# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 18, 2013

## STATE OF TENNESSEE v. PIERRETTE L. WESSELS

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-CR085837     Robbie Beal, Judge**

---

**No. M2012-01969-CCA-R3-CD - Filed September 20, 2013**

---

After a bench trial, the Williamson County Circuit Court convicted the appellant, Pierrette L. Wessels, of driving under the influence (DUI), DUI per se, and failing to obey a traffic control device. The trial court merged the DUI per se conviction into the DUI conviction and sentenced the appellant to eleven months, twenty-nine days to be served as forty-eight hours in jail and the remainder on supervised probation. For failing to obey a traffic control device, the trial court sentenced the appellant to thirty days on probation to be served concurrently with the DUI sentence. On appeal, the appellant contends that the trial court erred by failing to grant her motion to suppress evidence. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Venus Niner, Franklin, Tennessee, for the appellant, Pierrette L. Wessels.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Kim R. Helper, District Attorney General; and Kelly Lawrence and Carlin C. Hess, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

In August 2011, the Williamson County Grand Jury indicted the appellant for DUI, DUI per se, and failing to obey a traffic control device. Before trial, the appellant filed a

motion to suppress the evidence obtained as a result of her traffic stop.

At the suppression hearing, Officer Dawn Bennett of the Franklin Police Department testified that in the early morning hours of May 7, 2011, she was working patrol for the "midnight shift." About 1:45 a.m., Officer Bennett was at the intersection of Carothers and McEwen and saw a vehicle that did not stop at the intersection's flashing red light. Officer Bennett initiated a traffic stop, the vehicle pulled over, and Officer Bennett approached the driver, who was the appellant. Officer Bennett introduced herself and explained why she had stopped the appellant. As Officer Bennett was talking with the appellant, she noticed an odor of alcohol coming from inside the vehicle. At some point, Officer Bennett asked the appellant to step out of the vehicle. Officer Bennett said that two other people were in the vehicle with the appellant and that she asked the appellant to step out because she wanted to determine if the odor of alcohol was coming from the appellant. As the appellant got out of the vehicle, she was unsteady on her feet. Officer Bennett said she asked the appellant to step back to the patrol car, spoke with the appellant "a little bit further," and continued to smell alcohol. Officer Bennett stated that she asked the appellant if the appellant had consumed alcohol and that she thought the appellant said the appellant had consumed one beer. Based on the odor of alcohol, the appellant's being unsteady on her feet, and the traffic violation, Officer Bennett asked the appellant to perform field sobriety tests.

On cross-examination, Officer Bennett acknowledged that the traffic stop was captured on video, and defense counsel played the video for the trial court. The video shows Officer Bennett approach the appellant's Lexus SUV, inform the appellant that she "ran the red light back there," and ask for her registration and proof of insurance. Officer Bennett asks the appellant where she was coming from, and the appellant says she was going home. Officer Bennett asks her again where she was coming from, and the appellant answers, "P.F. Chang's." The officer notes the time and asks if the appellant went anywhere after she left P.F. Chang's. The appellant says no. The officer returns to her patrol car and can be heard relaying the appellant's information to dispatch. About ten minutes later, two male officers arrive at the scene. Although they and Officer Bennett cannot be seen in the video, Officer Bennett can be heard telling them that the appellant claimed she just left P.F. Chang's and that "they just took the long way around." One of the male officers says something to the effect of "that's retarded." Officer Bennett responds, "Yeah, I know. I'm fixin' to pull her out and talk to her and figure out what's going on. She was real evasive." One of the male officers tells Officer Bennett to "hurry up, Dawn." Shortly thereafter, Officer Bennett can be seen on the video returning to the appellant's vehicle. Officer Bennett asks the appellant to step out, the appellant gets out of the SUV, and Officer Bennett tells her to step back to the officer's patrol car. As the appellant walks toward the officer's car, she holds out her left arm as if to steady herself against the SUV. Officer Bennett asks if she is okay, and the appellant says yes.

When cross-examination resumed, Officer Bennett acknowledged that the appellant's traffic violation entitled her to issue the appellant a traffic citation. She said that after she stopped the appellant's vehicle, she returned to her patrol car to speak with dispatch and write the citation. Officer Bennett acknowledged that she did not tell dispatch that she was investigating a possible DUI and said that she did not have to notify dispatch. She said the other two officers arrived while she was still writing the citation in her patrol car. Officer Bennett thought the appellant was being evasive because she had to ask the appellant twice where the appellant was coming from. Officer Bennett acknowledged that she asked the appellant to walk back to the patrol car in order to give her the citation. She said she continued to question the appellant as they were standing by the patrol car because the questions were "in the scope" of her investigation.

On redirect examination, Officer Bennett testified that she summoned the other officers to the scene because she wanted to have the appellant get out of the vehicle. She said that "in order to do that, per policy, we have to have a second unit before we get any driver or [have] anybody exit a vehicle for a traffic stop or anything." On recross examination, Officer Bennett testified that although she wrote the citation, she could not remember if she gave it to the appellant. She said she "may have done a warrant for it instead" and "voided" the citation.

At the conclusion of the hearing, the trial court noted that the officer detained the appellant about thirteen minutes prior to having her perform the field sobriety tests, which "is not an unreasonable length of time to give an officer the ability to check in, check a driving history, write a citation, whatever it is the officers are required to do." The trial court stated that the "bigger issue" was whether the officer could ask the appellant to step out of the SUV. The court disagreed with Officer Bennett's conclusion that the appellant was being evasive. However, the trial court specifically accredited the officer's testimony that she smelled alcohol and, therefore, concluded that the officer appropriately asked the appellant to step out of the vehicle in order to determine whether the odor was coming from the appellant. The court noted that Officer Bennett did not voice her concern about the odor of alcohol to the other officers at the scene and stated that "she should have mentioned this to the other officers in order to support her statement that she smelled alcohol." Nevertheless, the trial court concluded that her failure to mention the smell of alcohol was not "so critical of an omission that would draw this Court to question the officer's credibility." Thus, the trial court concluded that the officer could ask the appellant to get out of the vehicle and denied the motion to suppress.

At the bench trial, Officer Bennett's testimony was essentially the same as her testimony at the suppression hearing. Of significant difference, however, she testified on direct examination that after she stopped and approached the SUV, she "said something [to

the appellant] about smelling the odor of alcohol." She said the appellant responded that "they had been to P.F. Chang's and had a few drinks." Officer Bennett also stated that after the appellant got out of the SUV, the appellant "was unsteady on her feet and she grabbed the side of her car to steady herself." Officer Bennett recognized the appellant's unsteadiness as a indication of impairment. Therefore, Officer Bennett needed to determine whether the appellant could drive home and asked her to perform field sobriety tests. Based upon the appellant's performance on the tests, Officer Bennett arrested her. The appellant consented to a breathalyzer test, which showed that her blood alcohol content was .115. The State played the video from Officer Bennett's patrol car for the trial court.

On cross-examination, Officer Bennett testified that the appellant initially denied drinking any alcohol. However, at some point, the appellant admitted that she had consumed beer. Officer Bennett acknowledged that in her warrant for the appellant's arrest, she stated that the appellant claimed she had just left P.F. Chang's and had been drinking beer. The defense replayed the video for the officer, and Officer Bennett acknowledged that from the time of the stop until she asked the appellant to step out of the SUV, Officer Bennett did not mention alcohol. Officer Bennett stated, "I don't recall exactly [when] we discussed her having beer."

At the conclusion of the officer's testimony, the State rested its case. The appellant did not present any witnesses and renewed her motion to suppress. Again, the trial court found that the stop was appropriate and accredited Officer Bennett's testimony that she smelled alcohol coming from the vehicle. Thus, the court concluded that the officer could ask the appellant to get out of the vehicle in order to determine whether the smell was coming from the appellant. The court also concluded that the length of the detention was not unreasonable. The court affirmed its denial of the motion to suppress and immediately announced its verdicts, finding the appellant guilty of all three counts.

## II. Analysis

The appellant challenges the trial court's denial of the motion to suppress. In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn

from that evidence." Odom, 928 S.W.2d at 23.

Initially, we note that both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures." Generally, a warrantless search or seizure is considered presumptively unreasonable, thus violative of constitutional protections. See State v. Walker, 12 S.W.3d 460, 467 (Tenn. 2000); see also State v. Hicks, 55 S.W.3d 515, 527 (Tenn. 2001). "Because stopping an automobile without a warrant and detaining its occupants unquestionably constitutes a seizure, the State . . . carrie[s] the burden of demonstrating the applicability of an exception to the warrant requirement." State v. Harris, 280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

The United States Supreme Court announced one such exception to the warrant requirement in Terry v. Ohio, 392 U.S. 1, 21 (1968), holding that a law enforcement officer may conduct a brief investigatory stop of an individual if the officer has a reasonable suspicion based upon specific and articulable facts that a criminal offense has been, is being, or is about to be committed. See also State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998). This standard also applies to the investigatory stop of a vehicle. Delaware v. Prouse, 440 U.S. 648, 663 (1979); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). In other words, a law enforcement officer may stop a vehicle if the officer possesses a reasonable suspicion supported by specific and articulable facts that an offense has been, is being, or is about to be committed. Watkins, 827 S.W.2d at 294.

The Supreme Court has observed that "[a]rticulating precisely what 'reasonable suspicion' . . . mean[s] is not possible." Ornelas v. United States, 517 U.S. 690, 695 (1996); see also State v. Smith, 21 S.W.3d 251, 256 (Tenn. Crim. App. 1999). "Reasonable suspicion is a particularized and objective basis for suspecting the subject of a stop of criminal activity." State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (citing Ornelas, 517 U.S. at 696). "The specific and articulable facts must be judged by an objective standard, not the subjective beliefs of the officer making the stop." State v. Norword, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996) (citing United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Accordingly, in evaluating the validity of an investigatory stop, a court must consider the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 8 (1989); Watkins, 827 S.W.2d at 294. These circumstances include, but are not limited to, "[the officer's] objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him." Watkins, 827 S.W.2d at 294 (citation omitted).

In the instant case, the appellant does not challenge the validity of the initial stop, and

the record establishes that Officer Bennett had probable cause to stop the appellant for failing to obey a traffic control device. See State v. Cox, 171 S.W.3d 174, 179 (Tenn. 2005) (stating that, generally, a traffic stop based upon probable cause to believe a traffic violation has occurred is constitutionally reasonable). Instead, the appellant contends that the trial court erred by accrediting the officer's testimony that she smelled alcohol coming from the vehicle and that the trial court erred by determining that the length of the stop was reasonable.

During an investigatory traffic stop, an officer's actions must reasonably relate to the circumstances prompting the stop. State v. Troxell, 78 S.W.3d 866, 871 (Tenn. 2002). Additionally, the detention must not last longer than needed to effectuate the reason underlying the stop, with the officer "'diligently pursu[ing] a means of investigation that [is] likely to confirm or dispel their suspicions quickly.'" Id. (quoting State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998)). Further detention will be justified if, during a valid stop, law enforcement officers develop a reasonable suspicion that the individual was engaged in other criminal activity. See United States v. Erwin, 155 F.3d 818, 822 (6th Cir. 1998).

Regarding the appellant's claim that the trial court erred by accrediting the officer's testimony that she smelled alcohol coming from the vehicle, the trial court disagreed with Officer Bennett's conclusion that the appellant was being evasive and noted that the officer failed to mention to the other officers that she smelled alcohol. Nevertheless, the trial court accredited Officer Bennett's testimony that she smelled alcohol. The trial court re-accredited the officer's testimony when the appellant renewed her motion to suppress. The credibility of the witness was a determination for the trial court, and the trial court could accept parts of the witness's testimony as true while rejecting other parts. We will not second-guess the trial court's credibility determination on appeal.

Regarding the length of the stop, Officer Bennett was permitted to extend the duration of the traffic stop upon reasonable suspicion that the appellant was driving while intoxicated. "[R]easonable suspicion can be established with information that is different in quality or content than that required to establish probable cause and can arise from information that is less reliable than that required to show probable cause." State v. Hanning, 296 S.W.3d 44, 49 (Tenn. 2009) (internal quotations omitted). Put another way, "probable cause means a fair probability that contraband or evidence of a crime will be found and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause." State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997) (internal quotations and emphasis omitted).

This court has previously found that the smell of alcohol on a driver, even if not strong, constituted reasonable suspicion to justify a brief detention to ascertain a driver's level of sobriety. See State v. Jashua Shannon Sides, No. E2000-01422-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 364, at *11 (Knoxville, May 16, 2001); see also State v. Ralph

Wilhoite, No. E2010-00352-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 289, at *12 (Knoxville, Apr. 26, 2011). In the instant case, the trial court found that the detention of the appellant, which lasted approximately thirteen minutes prior to the field sobriety tests, was a reasonable length of time for other officers to arrive so that Officer Bennett could ask the appellant to get out of the SUV and administer field sobriety tests. The evidence does not preponderate against the trial court's ruling that the length of the stop was not unreasonable.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE