# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 29, 2012 Session

## STATE OF TENNESSEE v. KHALID N. BASHIR

**Appeal from the Criminal Court for Bradley County**
**No. M-08-053      Carroll L. Ross, Judge**

---

**No.  E2011-01798-CCA-R3-CD - Filed February 14, 2013**

---

Appellant, Khalid Bashir, was stopped while driving on I-75 North in Bradley County, Tennessee.  Tennessee State Troopers issued a speeding citation and searched the vehicle. During the search, they discovered a large bag of marijuana, cocaine, Ecstasy, and two digital scales.  The Bradley County Grand Jury indicted Appellant for speeding; driving on a revoked license, second offense; criminal impersonation; possession of cocaine; possession of marijuana; possession of a Schedule I drug; and possession of drug paraphernalia. Appellant filed a motion to suppress the evidence discovered in the vehicle, arguing that the investigatory stop, length of detention, and warrantless search of his vehicle and backpack were unconstitutional.  The trial court denied the motion.  Appellant appeals the denial of his motion.  After a thorough review of the record, we conclude that the traffic stop was supported by probable cause and the trooper had probable cause to search the vehicle and backpack.  Therefore, we affirm the denial of the motion to suppress.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROGER A. PAGE, JJ., joined.

Andrew M. Freiberg, Cleveland, Tennessee, for the appellant, Khalid N. Bashir.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Steven Bebb, District Attorney General; and Brooklynn Townsend, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

Trooper Thomas Clower with the Tennessee Highway Patrol was working in the early morning hours of June 22, 2007, on Interstate 75 in Bradley County. On that portion of Interstate 75, the posted speed limit is 60 miles an hour. At 3:15 a.m., Trooper Clower saw a vehicle traveling in excess of 80 miles an hour. When Trooper Clower employed his radar device, he discovered that the vehicle was traveling at 85 miles an hour. Trooper Clower activated his blue lights and stopped the vehicle.

Trooper Clower approached the vehicle from the passenger's side. Appellant was the driver. He rolled down the window when Trooper Clower walked up to the vehicle. Trooper Clower testified that he smelled "an extremely strong smell of pungent, raw marijuana" when Appellant rolled down the window. Trooper Clower asked Appellant for his driver's license and returned to his patrol car to check Appellant's driving history and write up his speeding ticket. Trooper Clower called for another trooper to come help with the stop because of the marijuana smell. As Trooper Clower was writing the ticket the other trooper arrived.

While Trooper Clower wrote the ticket, Appellant remained in the vehicle. Trooper Clower returned to the passenger side of Appellant's vehicle. About nine minutes and thirty seconds had elapsed since the initial stop. He again smelled a strong smell of marijuana. Trooper Clower asked Appellant to get out of the vehicle so he could explain the citation. Appellant complied. Appellant signed the citation approximately ten minutes and thirty seconds after being stopped. Trooper Clower asked Appellant if there was anything illegal in the vehicle. Appellant responded that there was not. Trooper Clower asked if he could search the vehicle. Appellant refused the request and stated that he was on his way to Knoxville and wanted to leave.

Trooper Clower called for a canine unit. However, there were none available. Trooper Clower stated that Appellant was acting extremely nervous. Trooper Clower and the other trooper decided that they were going to search the vehicle because of the strong smell coming from the vehicle and Appellant's actions. When they looked in the vehicle they saw that it was very clean inside. There was a backpack on the backseat. They opened the backpack and found a huge bag of marijuana. At this point, Trooper Clower informed Appellant of his *Miranda* rights and arrested him.

After arresting Appellant, Trooper Clower completed a further search of the bag and found cocaine, Ecstasy, and two digital scales. Appellant admitted to Trooper Clower that

it was not for personal use, and he was intending to sell the drugs to students at the University of Tennessee.

As Trooper Clower was taking Appellant to jail, Appellant also admitted that the driver's license he presented to the trooper was his brother's license. When Trooper Clower was given Appellant's real name, he discovered that Appellant had a revoked license.

The Bradley County Grand Jury indicted Appellant for speeding; driving on a revoked license, second offense; criminal impersonation; possession of cocaine; possession of marijuana; possession of a Schedule I drug; and possession of drug paraphernalia. Appellant filed a motion to suppress on July 8, 2011. The trial court held a hearing on the motion on August 8, 2011. At the conclusion of the hearing, the trial court made the following ruling on the record:

> On the stop and on the search, I'm going to rule against the defendant on that. I think the officer very clearly testified to what went on. . . . When he first started [testifying], [Trooper Clower] said, "Judge, you can see me step back there." He sort of recoiled when that window went down and the strong odor of marijuana. And I agree, I think he had a right to search at that point. There's a crime committed. He had a lawful right to stop a vehicle because of speeding. He went to the, he went to the window; the window came down, and he clearly steps back. And he explained why he did not at that point say, "I" – that he smelled marijuana. He was very specific about that. He has all sorts of things to be concerned with, not the least of which is his own safety. He did not mention that, but I think the Court can certainly consider that. . . . I just tend to agree with him. I think he had a right to search at that point no matter what else happened from that point on, but let's look at what else happened.
>
> . . . .
>
> But either way, the Court's ruling, I will deny your motion to suppress the evidence obtained pursuant to the arrest because I think it was a legal stop. I think it was at that point, you had progressively probable cause develop, depending on the very objective findings of the officer. He recognizes an odor of marijuana; he smelled it, and he didn't just smell it. He said it was a strong odor coming out of that vehicle. So, I think at that point on, he had a right to search the vehicle. He had a right to search the bag in the vehicle, and I overrule your motion on that.

Appellant entered into a plea agreement wherein he pled guilty to possession of cocaine and possession of a Schedule I drug. All other charges were dismissed. He was sentenced to an effective sentence of twelve years. As part of his guilty plea, he reserved a certified question pursuant to Rule 37 of the Tennessee Rules of Criminal Procedure.

## **ANALYSIS**

As stated above, as part of his guilty plea, Appellant reserved a certified question of law for appeal pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure for appeal to this Court. In pertinent part, Rule 37(b) of the Tennessee Rules of Criminal Procedure provides:

> The defendant or the state may appeal any order or judgment in a criminal proceeding when the law provides for such appeal. The defendant may appeal from any judgment of conviction:
>
> (1) on a plea of not guilty; or
>
> (2) on a plea of guilty or nolo contendere, if:
>
> (A) the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved–with the consent of the state and of the court–the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> (I) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
>
> (iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case; . . . .

Appellant's certified question of law on appeal is the following:

Specifically, the Defendant submits that based upon the testimony of the arresting Trooper elicited at the hearing to suppress and the video recording of the incident, the State failed to establish that either reasonable suspicion or probable cause existed that a crime had been committed, was being committed or was about to be committed by the Defendant to justify the detention of the Defendant beyond the scope of the traffic stop for a speeding violation and the subsequent warrantless search of the automobile and backpack in the Defendant's possession were in violation of his constitutional rights as grounded in Article I, Section 7 of the Constitution of Tennessee, Amendments IV and XIV of the Constitution of the United States.

"This Court will uphold a trial court's findings of fact in a suppression hearing unless the evidence preponderates otherwise." *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, "[t]he prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. Our review of a trial court's application of law to the facts is de novo, with no presumption of correctness. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (citing *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999); *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)). When the trial court's findings of fact are based entirely on evidence that does not involve issues of witness credibility, however, appellate courts are as capable as trial courts of reviewing the evidence and drawing conclusions, and the trial court's findings of fact are subject to de novo review. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures by government agents. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals

against arbitrary invasions of government officials.'" *Keith*, 978 S.W.2d at 865 (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967)). The Tennessee Supreme Court has noted previously that "[a]rticle I, [section] 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment [of the United States Constitution]" and that federal cases applying the Fourth Amendment should be regarded as "particularly persuasive." *Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968).

**The Traffic Stop**

Under both constitutions, "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *Yeargan*, 958 S.W.2d at 629 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003). A police officer's stop of an automobile constitutes a seizure under both the United States and Tennessee Constitutions. *See Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450 (1990); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997). Further, our supreme court has stated that "[w]hen an officer turns on his blue lights, he or she has clearly initiated a stop" and the vehicle's driver is "seized" within the meaning of the *Terry v. Ohio*, 342 U.S. 1 (1968) decision. *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993). Therefore, to be considered "reasonable," a warrantless stop of a driver must fall under an exception to the warrant requirement.

One of these narrow exceptions occurs when a law enforcement officer stops an automobile based on probable cause or reasonable suspicion that a traffic violation has occurred. *Whren*, 517 U.S. at 810; *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002); *Vineyard*, 958 S.W.2d at 734. If the officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in making the stop. *See Whren*, 517 U.S. at 813-15; *Vineyard*, 958 S.W.2d at 734-35. Another such exception occurs when a law enforcement officer initiates an investigatory stop based upon specific and articulable facts that the defendant has either committed a criminal offense or is about to commit a criminal offense. *Terry*, 392 U.S. at 20-21; *Binette*, 33 S.W.3d at 218. This narrow exception has been extended to the investigatory stop of vehicles. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether the law enforcement officer had reasonable suspicion to justify an investigatory stop, this Court must consider the totality of the circumstances, which includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop. *See Terry*, 392 U.S. at 21; *Binette*, 33 S.W.3d at 218; *Watkins*, 827 S.W.2d at 294. Objective

standards apply, rather than the subjective beliefs of the officer making the stop. *State v. Day*, 263 S.W.3d 891, 903 (Tenn. 2008); *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). "An officer making an investigatory stop must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.'" *Day*, 263 S.W.3d at 902 (quoting *Terry*, 392 U.S. at 27). This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *Id.* at 903; *Watkins*, 827 S.W.2d at 294 (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)). A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. *Terry*, 392 U.S. at 21.

In the case herein, it is clear that Appellant was "seized" within the meaning of the state and federal Constitutions. Trooper Clower testified that he turned on his lights in order to stop Appellant's vehicle. Thus, in order for the stop to be constitutionally valid, at the time that Trooper Clower turned on his vehicle's blue lights, he must have at least had a reasonable suspicion, supported by articulable facts, that Appellant had committed, or was about to commit an offense. Trooper Clower testified that he estimated that Appellant was traveling in excess of 80 miles per hour in an area where the posted speed limit was 60 miles per hour. When he employed his radar device, he determined that Appellant was actually traveling at a speed of 85 miles per hour. Under Tennessee Code Annotated section 55-8-152(c), it is unlawful for an individual to drive more than 70 miles per hour. Therefore, Trooper Clower had probable cause to believe that Appellant was committing an offense, not merely a reasonable suspicion.

### The Search

Appellant also argues that there was not sufficient probable cause to support the warrantless search of the backpack and the vehicle.

Trooper Clower testified that when he initially approached Appellant's vehicle and Appellant rolled down his window, he smelled a strong smell of raw marijuana. This Court has held that the smell of raw marijuana coming from an individual's vehicle is sufficient probable cause to support a warrantless search of a vehicle due to the exigent circumstances of a movable vehicle stopped on the open road. *State v. Luis Perez*, No. W2004-00980-CCA-R3-CD, 2005 WL 1114463, at *3-4 (Tenn. Crim. App., at Jackson, May 11, 2005). After smelling the marijuana, Trooper Clower had sufficient probable cause to search the vehicle. Moreover, when there is probable cause to search a vehicle, the containers within that vehicle which are capable of concealing the object of the search may also be lawfully

searched. *United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 2171 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). Therefore, the officers' discovery and search of the backpack containing the bag of marijuana was constitutionally permissible.

Appellant also argues that his detention exceeded the length necessary to effectuate the purpose of the stop. While the original purpose of the stop was the commission of a traffic offense, circumstances following the stop, i.e. the smell of raw marijuana by the officer, created probable cause to search the vehicle and its contents. The length of the stop was therefore not unduly lengthy given this latter eventuality.

We conclude that the smell of marijuana emanating from the vehicle was sufficient probable cause to support the search of the vehicle and Appellant's backpack.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of the motion to suppress.

_____
JERRY L. SMITH, JUDGE