IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 9, 2015 Session

**STATE OF TENNESSEE v. ROY D. SEAGRAVES**

**Appeal from the Circuit Court for Williamson County**
**No. IICR078140     Walter C Kurtz, Judge**

_____

**No. M2014-02334-CCA-R3-CD – Filed November 5, 2015**

_____

Pursuant to a negotiated plea agreement, Defendant, Roy Seagraves, pleaded guilty to driving under the influence of an intoxicant. He properly reserved a certified question of law for appeal. The question of law is dispositive of the case. Having reviewed the record in this case, we hold that the evidence does not support the trial court's finding that the police officer had reasonable suspicion to stop Defendant's vehicle. Accordingly, we reverse the judgment of the trial court and dismiss the charges with prejudice.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Chadwick W. Jackson, Nashville, Tennessee, for the Appellant, Roy D Seagraves.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Kim R. Helper, District Attorney General; and Carlin Hess, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Defendant was indicted in a three-count indictment for driving under the influence of an intoxicant, driving with a blood or breath alcohol content of .08 percent or greater, and driving with a blood or breath alcohol content of .20 percent or greater. Defendant filed a motion to suppress evidence, asserting that the officer did not have reasonable suspicion or probable cause necessary to justify the stop of his vehicle. Following an evidentiary hearing, the trial court denied Defendant's motion. Pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A)(iv), Defendant entered a conditional plea of

guilty to first offense DUI and reserved as a dispositive question of law for appeal the issue of the lawfulness of the stop. The negotiated plea agreement provided for a sentence of 11 months and 29 days in the county workhouse, suspended after serving seven days; a fine of $350; a suspension of Defendant's driving privileges; and a requirement that Defendant attend alcohol safety school. The remaining counts were merged. An agreed order was entered by the trial court reserving the following certified question of law: "Whether the traffic stop was supported by articulable reasonable suspicion that a crime was being committed or probable cause that a traffic offense had occurred, thus legally justifying the initial seizure of the defendant?"

*Suppression hearing*

Officer Adam Cohen, of the Franklin Police Department, stopped Defendant's vehicle in the early morning hours on January 25, 2014. Officer Cohen was on patrol in the area of Murfreesboro Road and Carothers Parkway in Franklin. At approximately, 2:25 a.m., Officer Cohen observed a vehicle turn eastbound onto Murfreesboro Road from an adjoining road in front of his patrol car. The vehicle was traveling in the same direction as Officer Cohen. Officer Cohen followed the vehicle. He "observed it swaying back and forth within it's [sic] lane of travel. As the vehicle continued to drive, it drove over the yellow line and made extremely wide turns as the road turned." Officer Cohen testified that he believed the vehicle "crossed over the yellow line one time. And then also drove onto it." Officer Cohen testified that the vehicle drove approximately five miles per hour below the posted speed limit. The vehicle weaved within its lane of travel. Officer Cohen testified that he observed the vehicle for "about a mile to a mile and a half."

A dashboard video recording was played for the court. The video shows Defendant's vehicle pull onto the road in front of Officer Cohen's patrol car at 2:23:17 a.m., traveling eastbound, the same direction as Officer Cohen. Defendant's vehicle drifted towards the right eastbound lane while driving around a curve in the road to the left. Defendant's vehicle then drifted left towards the center turning lane, and his left tires touched the center dividing line but did not cross the line. Defendant then drifted two more times to the left and almost touched the center line. He then drifted again to the right two more times and almost touched the line. Officer Cohen activated his blue lights at 2:25:09 a.m., and stopped Defendant's vehicle.

Officer Cohen testified that he stopped Defendant's vehicle because Defendant's "vehicle crossed over the yellow line and then drove onto the yellow line, white line on a couple of occasions. It was also making wide turns and weaving within its lane of travel."

2

At the conclusion of the suppression hearing, the trial court denied Defendant's motion to suppress. The court made the following findings and conclusions:

> You know, I think this is a pretty close call. But I do conclude this – there are several factors that [a]ffect the Judge's decision. One, the Officer followed this vehicle for about a mile to a mile and a half. Yes, the weaving within the lane would not be enough by itself except that this weaving, even within the lane, was continuous through this – through this mile, mile and a half, and by my own observation consistent with the Officer's testimony. The Defendant touched lines on his left, then he would go over and tou[ch] the lines on his right and back to the other side.
>
> So, while it is a close call, I think my observations of the tape and the Officer's testimony convinced me that he has had reasonable suspicion consistent with constitutional standards.

We note that the trial court did not find that Defendant crossed over any line in the road. Our review of the video confirms that Defendant's vehicle never crossed over any line in the road.

*Analysis*

In reviewing the trial court's decision on a motion to suppress, we review the trial court's legal conclusions de novo. *State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008). In doing so, we give deference to the trial judge's findings of fact unless the evidence preponderates otherwise. *Id*.; *see State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "'[C]redibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). In reviewing the findings of fact, evidence presented at trial may "'be considered by an appellate court in deciding the propriety of the trial court's ruling on the motion to suppress.'" *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003) (quoting *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). The prevailing party on the motion to suppress is afforded the "'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *Northern*, 262 S.W.3d at 748 (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)); *see State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *Odom*, 928 S.W.2d at 23.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against "unreasonable searches and seizures."

It is well settled that "the temporary detention of individuals during the stop of a vehicle by police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' which implicates the protection of both the state and federal constitutional provisions." *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005). In general, warrantless searches and seizures are presumptively unreasonable and any evidence obtained as a result of the warrantless action is subject to suppression. *State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009). However, if the state "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement," the evidence will not be suppressed. *Keith*, 978 S.W.2d at 865.

The United States Supreme Court has held that law enforcement officers must have probable cause or an "articulable reasonable suspicion" to believe that a traffic violation has occurred when they initiate a traffic stop without a warrant. *See State v. Brotherton*, 323 S.W.3d 866, 870 (Tenn. 2010) (citing *Whren v. U.S.*, 517 U.S. 806, 116 S. Ct. 1796 (1996)). Reasonable suspicion exists when "specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion." *See id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). An officer's "inchoate and unparticularized suspicion or hunch" is not sufficient reasonable suspicion. *Id.*

Tennessee courts' application of the reasonable suspicion standard entails looking at the totality of the circumstances "to determine whether an officer reasonably believed that the operator of the vehicle had either committed a crime or was about to commit a crime." *Brotherton*, 323 S.W.3d at 870 (citing *State v. Levitt*, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001) and *State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000). The totality of the circumstances includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop. *See Terry*, 392 U.S. at 21, 88 S. Ct. 1868; *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). Objective standards apply, rather than the subjective beliefs of the officer making the stop. *State v. Day*, 263 S.W.3d 891, 903 (Tenn. 2008); *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

The precise issue certified for our review is: "Whether the traffic stop was supported by articulable reasonable suspicion that a crime was being committed or probable cause that a traffic offense had occurred, thus legally justifying the initial seizure of the defendant?" The State in its brief acknowledges that Defendant was seized following Officer Cohen's activation of his blue lights in order to stop Defendant's vehicle. *See State v. Williams*, 185 S.W.3d 311, 317-18 (Tenn. 2006).

Defendant contends that the holdings and factual scenarios presented in the cases of *U.S. v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000); *State v. Binette*, 33 S.W.3d 215

(Tenn. 2000); *State v. William R. Cook*, No. M2008-02562-CCA-R3-CD, 2009 WL 2461905 (Tenn. Crim. App., Aug. 12, 2009); *State v. Alorra D. Puckett*, No. E2002-01959-CCA-R3-CD, 2003 WL 21638048 (Tenn. Crim. App., July 9, 2003), *perm. app. denied* (Tenn., Dec. 8, 2003); *State v. Carl Martin*, No. W2002-00066-CCA-R3-CD, 2003 WL 57311 (Tenn. Crim. App., Jan. 2, 2003); and *State v. Ann Elizabeth Martin*, E1999-01361-CCA-R3-CD, 2000 WL 1273889 (Tenn. Crim. App., Sept. 8, 2000), demonstrate that a driver is not required to drive perfectly on the highways in order to avoid being stopped by police and subjected to a seizure. Applying the rationale in those cases to the facts herein, Defendant asserts that his "driving behavior on the night in question does not establish reasonable suspicion that he was committing an offense."

The State responds that Officer Cohen observed Defendant fail to maintain his vehicle "as nearly as practicable" within his lane of traffic as required by Tennessee Code Annotated section 55-8-123(1), a violation of which is a Class C misdemeanor. The State asserts that Officer Cohen's observations provided reasonable suspicion to make the stop. Defendant asserts that this court should not undertake an analysis of whether Officer Cohen observed a violation of Tennessee Code Annotated section 55-8-123(1) because Officer Cohen did not testify or otherwise indicate that a violation of the traffic offense was the basis for his stop of Defendant. Contrary to Defendant's assertion in his brief, however, that "Officer Cohen did not testify, nor is there any indication in the record, that he initiated the stop or even contemplated stopping [Defendant] for failing to drive his vehicle as 'nearly as practicable entirely within a single lane[,]'" we note that Officer Cohen's testimony consisted almost entirely of his observations of Defendant's vehicle failing to maintain its lane of travel. Officer Cohen testified that he stopped Defendant's vehicle because it "[d]rove over the yellow line, and then it drove onto the yellow line and dotted white line, [and] was also weaving within its lane of travel."

Although Officer Cohen did not testify that he stopped Defendant's vehicle for a violation of Tennessee Code Annotated section 55-8-123(1), both parties addressed the statute in their arguments to the trial court. We also note that Officer Cohen did not testify that he stopped Defendant's vehicle for suspicion of DUI. However, if the stop is supported by probable cause or reasonable suspicion, it is constitutionally valid. *See Whren v. U.S.*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (the Court held that there is no constitutional violation if there is a valid reason for a traffic stop even if the officer may have other motives as a pretext for the stop); *see also State v. Stacey Wayne Creekmore*, No. E2008-00012-CCA-R3-CD, 2009 WL 2567771, at *5 (Tenn. Crim. App., Knoxville, Aug. 19, 2009), *perm. app. denied* (Tenn., Feb. 22, 2010) (if the officer had testified that the defendant's speed was a reason for the stop, "we would agree that probable cause existed and supported the stop, regardless if she actually also suspected a DUI.").

5

Defendant relies upon our supreme court's holding in *State v. Binette*, 33 S.W.3d 215 (Tenn. 2000). In *Binette*, the issue before the court was whether the officer had reasonable suspicion, supported by specific and articulable facts, that Binette had committed, or was about to commit, the criminal offense of driving under the influence of an intoxicant. *Id*. at 218. The court held that the evidence did not support the trial court's finding that the officer had reasonable suspicion to stop the defendant because the videotape of the encounter only showed the defendant making lateral movements within his own lane of travel. At the suppression hearing, the officer did not testify, and the videotape made immediately before the stop was the only evidence introduced. *Id*. at 219. The court reviewed the video evidence and found no evidence "of pronounced weaving or hard swerving by Binette." *Id*. The court commented that the "number of times that a vehicle *touches* the center line or *drifts within a lane* is not dispositive of the issue before this Court. Rather, . . . a court must consider the totality of the circumstances in determining whether reasonable suspicion was present at the time a stop was initiated." *Id*. (emphasis added). The court also concluded that "Binette did not violate any rules of the road during the period in which the video camera recorded his driving." *Id*.

The State distinguishes *Binette* because the record in that case did not include officer testimony. The supreme court's analysis was based solely on its de novo review of the video recording. Additionally, in *Binette*, the video contradicted the officer's recorded narrative. Here, the State argues, the video recording did not contradict Officer Cohen's testimony or undermine his credibility. The State further asserts that the totality of circumstances, including that the weather was clear, there were no other vehicles on the road, and that it occurred in the early morning hours support the trial court's conclusion that Officer Cohen had reasonable suspicion to stop Defendant's vehicle. We note that the same circumstances that the State emphasizes in this case were also present in the facts of *Binette*. The defendant in *Binette* was driving late at night, the weather was fair, there was no other traffic, the video showed two minutes of Binette's driving, and the weaving was entirely within his lane of travel and was not pronounced or exaggerated. *Id*. at 218-219. Furthermore, the State's distinction applies only to the standard of review. *Id*. at 217 ("when a court's findings of fact at a suppression hearing are based solely on evidence that does not involve issues of credibility, such as the videotape evidence . . . , the rationale underlying a more deferential standard of review is not implicated.").

In the present case, the trial court apparently accredited part of the officer's testimony, stating, "the weaving within the lane would not be enough by itself except that this weaving, even within the lane, was continuous through this – through this mile, mile and a half, and by my own observation consistent with the Officer's testimony." However, as noted above, the trial court did not make a specific finding that Defendant

crossed any dividing lines. In fact, the court specifically found that Defendant only touched the lines. Officer Cohen testified at the suppression hearing that he stopped Defendant's vehicle because he observed Defendant "[d]r[i]ve over the yellow line, and then it drove onto the yellow line and dotted white line, was also weaving within [his] lane of travel." He testified on direct examination that he "believe[d] [Defendant] crossed over the yellow line one time. And then also drove onto it." On cross-examination, however, Officer Cohen testified that he was not "completely" sure that Defendant actually crossed the dividing line. He also agreed with defense counsel that Defendant made "wide turns within [his] lane . . . . Never leaving the pathway of the lane." Having reviewed the trial court's findings and the video evidence in this case, we find that Defendant's vehicle did not cross any dividing lines. Like the defendant in *Binette*, Defendant's weaving was not pronounced or exaggerated. Therefore, pursuant to our supreme court's holding in *State v. Binette*, we conclude that Officer Cohen's observations did not give rise to reasonable suspicion to justify a stop of Defendant's vehicle.

We recognize and distinguish two recent unpublished opinions of this court, *State v. Jeffrey D. Aaron*, No. M2014-01483-CCA-R3-CD, 2015 WL 4183033, (Tenn. Crim. App., Nashville, July 10, 2015), and *State v. Linzey Danielle Smith*, No. M2013-02818-CCA-R3-CD, 2015 WL 412972, (Tenn. Crim. App., Nashville, Feb. 2, 2015), *perm. app. granted* (Tenn., May 14, 2015), both authored by the author of the opinion in this case, in which we applied our supreme court's analysis in *State v. Brotherton*, 323 S.W.3d 866 (Tenn. 2010), and concluded that "in both 'probable cause' for arrest (or citation) cases and in 'reasonable suspicion for investigatory stop' cases involving Class C misdemeanor traffic offenses, it is not required that what the officer observes be sufficient to support beyond a reasonable doubt that a driver has violated the misdemeanor traffic offense." *State v. Linzey Danielle Smith*, 2015 WL 412972, at *8. "Rather the [relevant] inquiry is whether [the officer's] observations were specific and articulable facts that support a reasonable suspicion that Defendant committed the traffic offense." *State v. Jeffrey D. Aaron*, 2015 WL 4183033, at *4.

The State analogizes the facts in this case to the facts in *State v. Linzey Danielle Smith*. In that case, a panel of this court, relying upon our supreme court's opinion in *Brotherton*, specifically rejected the analysis in prior cases in which the courts have applied the conclusion in *Ann Elizabeth Martin*, No. 1999-01361-CCA-R3-CD, 2000 WL 1273889 (Tenn. Crim. App., Knoxville, Sept. 8, 2000), that "a momentary drift out of lane [does not constitute] driving a vehicle outside of a single lane," to cases where the issue is whether "probable cause" or "reasonable suspicion" exists to justify a vehicle stop, based upon a violation of Tennessee Code Annotated section 55-8-123(1). 2015 WL 412972, at *8. In *Linzey Danielle Smith*, the evidence showed that the officer observed the defendant's vehicle drift toward the right shoulder of the road as it entered a

7

"big swooping curve" to the left. Defendant's vehicle "crossed the fog line by less than six inches, probably." Defendant drifted again to the right two more times, almost crossing the fog line again and then barely touching the fog line. *Id*. at *2. A panel of this court concluded that even if the officer's observations were "clearly not enough to support a conviction" for the traffic offense in section 55-8-123(1), the evidence was sufficient to establish both probable cause and reasonable suspicion to justify a stop of the defendant's vehicle. *Id*. at *8.

Unlike the defendant in *Linzey Danielle Smith*, Defendant in this case did not cross any dividing line. In *State v. Jeffrey D. Aaron*, the officer testified that the defendant "was weaving within his lane of travel." The video recording showed the vehicle weaving one time within its lane, then touch the dividing line for the center lane, and briefly cross over the dividing line once. Applying the analysis in *Brotherton*, a panel of this court upheld the trial court's denial of the defendant's motion to suppress. Based on the evidence that the defendant's vehicle "actually crossed over the line and into the continuous turn lane," the officer's observations were sufficient to establish reasonable suspicion to justify the stop. 2015 WL 4183033, at *4. The panel in *State v. Jeffrey D. Aaron* noted that "merely 'touching' the line alone would not be sufficient to justify the stop based upon a possible violation of T.C.A. § 55-8-123(1)." *Id*. at *4.

Finally, the State agrees with the trial court's assessment that this case is a "close call" and urges this court to apply the good faith exception to the exclusionary rule. Tennessee courts have repeatedly declined to recognize an officer's "good faith" as an exception to the exclusionary rule in other contexts. *See, e.g., State v. Carter*, 16 S.W.3d 762, 768 n. 8 (Tenn. 2000) ("[T]his Court has yet to adopt the [good faith] exception."); *State v. Bearden*, 326 S.W.3d 184, 188 (Tenn. Crim. App. 2010) ("Tennessee, however, has not adopted this 'good faith exception."). We note that we are limited to consideration of the question preserved. *See State v. Day*, 263 S.W.3d 891, n.8 (Tenn. 2008). Therefore, we decline to address the issue raised by the State of whether Officer Cohen acted in good faith.

## CONCLUSION

Based upon the foregoing, the denial of the motion to suppress is reversed and the charges against Defendant are dismissed with prejudice.

_____
THOMAS T. WOODALL, PRESIDING JUDGE