IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2016 Session

**STATE OF TENNESSEE v. BOBBY JAY FUQUA**

**Appeal from the Circuit Court for Robertson County**
**No. 74CC-2015-CR-445   William R. Goodman, III, Judge**
_____

**No. M2016-00426-CCA-R3-CD – Filed March 10, 2017**
_____

Pursuant to a negotiated plea agreement, Defendant, Bobby Jay Fuqua, pleaded guilty to driving under the influence of an intoxicant (DUI), fourth offense. He properly reserved a certified question of law regarding whether the police officer had reasonable suspicion to seize the Defendant. Upon reviewing the record and the applicable law, we conclude that the evidence supports the trial court's finding that the police officer had reasonable suspicion to seize Defendant. Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Shannon L. Crutcher, Nashville, Tennessee, for the appellant, Bobby Jay Fuqua.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Defendant was indicted for DUI, fourth offense, driving with a blood or breath alcohol content of .08 percent or greater, driving on a suspended or revoked license, second offense, violation of the open container law, violation of the implied consent law, and indecent exposure. Defendant filed a motion to suppress, asserting that the police officer did not have reasonable suspicion or probable cause necessary to justify the seizure. Following an evidentiary hearing, the trial court denied Defendant's motion.

Pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A), Defendant entered a plea of guilty to fourth offense DUI and reserved as a dispositive question of law for

appeal the issue of the lawfulness of the seizure. The negotiated plea agreement provided for a sentence of one year in jail, suspended after serving 150 days, and a concession that Defendant was a habitual motor vehicle offender. The remaining counts were dismissed. An agreed order was entered by the trial court reserving the following certified question of law:

> Did Officer Lloyd possess reasonable suspicion based on specific and articulable facts at the time he activated his vehicle's blue lights and seized the Defendant within the meaning of the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution that the Defendant had committed, or was about to commit, a criminal offense?

## *Suppression Hearing*

Corporal Michael Lloyd of the Springfield Police Department testified that on February 12, 2015, at 10:05 p.m., he was on routine patrol and driving westbound on Central Avenue, a three-lane road with businesses primarily located along the street. Corporal Lloyd drove by a car wash where he saw a vehicle parked by the vacuum cleaner stalls in a well-lit parking lot and a man standing beside the driver's door. Corporal Lloyd said the man appeared to be urinating in the parking lot. Corporal Lloyd said the man "had his hands at his waist, … looking down, consistent with what all of us would view as a person that's probably urinating in public." Corporal Lloyd demonstrated for the trial court the position in which he saw the man. The record reflected that Corporal Lloyd had his hands by his groin area and his shoulders bent over.

Corporal Lloyd made a "U-turn" at an intersection and proceeded back to the area to verify his observations. He stated that as he was driving back to the area, he saw a large mass of fluid beginning to drain toward Central Avenue from where the man had been standing. Corporal Lloyd said that the fluid could not have come from the wash bay but that he believed the fluid was from the man urinating in public. Corporal Lloyd drove his patrol car into the parking lot and immediately activated the blue lights. He maintained that he observed the fluid before activating his blue lights.

Corporal Lloyd began recording his observations and the resulting encounter, and the recording was played for the trial court. The video reflected that after Corporal Lloyd pulled into the parking lot and approached Defendant, he asked Defendant from where the fluid came, Defendant responded, "My bladder." Corporal Lloyd mentioned that Defendant had urinated on himself and asked him whether he had drunk alcohol that night. Defendant responded that he had consumed one beer. Upon further questioning, Defendant stated that he had consumed two or three beers. Corporal Lloyd administered

multiple field sobriety tests.  After determining that Defendant failed the tests, Corporal Lloyd arrested Defendant for driving under the influence.  Defendant refused to ~~submit to~~ agree to submit a blood sample for a blood alcohol test, and Corporal Lloyd stated that he would obtain a search warrant as a result.

On cross-examination, Corporal Lloyd testified that when he first saw Defendant, Defendant was standing next to the parked truck, that the driver's door was open, and that Defendant was facing away from him.  Corporal Lloyd acknowledged that he did not see Defendant's buttocks or genitals or Defendant urinating.  Corporal Lloyd also acknowledged that based upon the video recording, his observation of Defendant lasted approximately three seconds.  By the time that Corporal Lloyd turned around and headed back toward the parking lot, Defendant was inside of his vehicle.

Corporal Lloyd testified that he activated his blue lights as he was pulling into the parking lot.  He acknowledged that he stated in the affidavit of complaint that as he was pulling into the parking lot, he observed a large wet area outside of the driver's door that was flowing across the parking lot.  Corporal Lloyd clarified that he saw the area of fluid both as he was traveling eastbound on Central Avenue back to the car wash and as he was pulling into the parking lot.  He acknowledged that he testified during the preliminary hearing that he saw a wet spot in the parking lot as he was traveling westbound on Central Avenue.  He clarified that he saw the fluid in the parking lot as he was traveling eastbound on Central Avenue.  He acknowledged that he had never testified regarding his observation while traveling eastbound prior to the suppression hearing.  He further acknowledged that the position in which he saw Defendant could have been consistent with someone reaching for change in his pocket to put in a vacuum cleaner.

On redirect examination, Corporal Lloyd testified that during the preliminary hearing, he clarified that he was unable to see the puddle of fluid while traveling westbound on Central Avenue and that defense counsel never asked him whether he saw the puddle while traveling eastbound on Central Avenue.  Corporal Lloyd stated that there was not any obstruction between him and the Defendant when he first saw Defendant standing in the parking lot.  Corporal Lloyd also stated that when he saw the puddle, he had slowed down in the turning lane and that there was a "clear line of sight" to the puddle.  He maintained that had he not seen the puddle, he would not have turned into the parking lot and activated his blue lights.

On re-cross examination, Corporal Lloyd testified that when he was in the turning lane before turning into the parking lot, two vehicles passed in front of him.  He stated that there was a break between the two vehicles whereby he could "probably see all the way to [Defendant]."

- 3 -

At the conclusion of the hearing, the trial court denied Defendant's motion to suppress. The trial court found that when the officer drove by the parking lot, he saw Defendant in the "urination position." The trial court found that after the officer turned around and before he activated his blue lights, he saw the puddle in the parking lot. The trial court concluded that as a result, the officer had reasonable suspicion to believe that Defendant was engaged in a public execratory function and, therefore, was committing the offense of public indecency.

*Analysis*

In reviewing the trial court's decision on a motion to suppress, we review the trial court's legal conclusions de novo. *State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008). In doing so, we give deference to the trial court's findings of fact unless the evidence preponderates otherwise. *Id.*; *see State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "'[C]redibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). In reviewing the findings of fact, evidence presented at trial may "'be considered by an appellate court in deciding the propriety of the trial court's ruling on the motion to suppress.'" *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003) (quoting *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). The prevailing party on the motion to suppress is afforded the "'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *Northern*, 262 S.W.3d at 748 (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)); *see State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *Odom*, 928 S.W.2d at 23.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against "unreasonable searches and seizures." It is well settled that "'the temporary detention of individuals during the stop of a vehicle by police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' which implicates the protection of both the state and federal constitutional provisions.'" *State v. Cox*, 171 S.W.3d 174, 179 (Tenn. 2005) (quoting *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997)). In general, warrantless searches and seizures are presumptively unreasonable and any evidence obtained as a result of the warrantless action is subject to suppression. *State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009). However, if the State "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement," the evidence will not be suppressed. *Keith*, 978 S.W.2d at 865.

The United States Supreme Court has held that law enforcement officers must have probable cause or an "articulable reasonable suspicion" to believe that a traffic

violation has occurred when they initiate a traffic stop without a warrant. *See State v. Brotherton*, 323 S.W.3d 866, 870 (Tenn. 2010) (citing *Whren v. United States*, 517 U.S. 806 (1996)). Reasonable suspicion exists when "specific and articulable facts ... taken together with rational inferences from those facts, reasonably warrant that intrusion." *See id.* (quoting *Terry v. Ohio*, 392 U.S. 1 (1968)). An officer's "inchoate and unparticularized suspicion or hunch" is not sufficient reasonable suspicion. *Id.* (quoting *Terry*, 392 U.S. at 27).

Tennessee courts' application of the reasonable suspicion standard entails looking at the totality of the circumstances "to determine whether an officer reasonably believed that the operator of the vehicle had either committed a crime or was about to commit a crime." *Id.* (citing *State v. Levitt*, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001) and *State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000)). The totality of the circumstances includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop. *See Terry*, 392 U.S. at 21; *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). Objective standards apply, rather than the subjective beliefs of the officer making the stop. *State v. Day*, 263 S.W.3d 891, 903 (Tenn. 2008); *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

In its response to Defendant's motion to suppress, the State conceded that Defendant was seized when Corporal Lloyd activated his blue lights. *See State v. Williams*, 185 S.W.3d 311, 317-18 (Tenn. 2006), *abrogated in part by State v. McCormick*, 494 S.W.3d 673 (Tenn. 2016); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993). Thus, we must determine whether the officer had reasonable suspicion justifying the seizure when he activated his blue lights while pulling into the parking lot.

The trial court found that the officer had reasonable suspicion that Defendant was urinating in public and, therefore, committing the offense of public indecency as provided in Tennessee Code Annotated 39-13-517(b)(3). Pursuant to section 39-13-517(b)(3), a person commits public indecency "who, in a public place, knowingly or intentionally … performs an excretory function." Violation of this section is a Class B misdemeanor. T.C.A. § 39-13-517(d)(1).

Prior to seizing Defendant, the officer observed him in an empty parking lot of a public business, standing next to his vehicle and facing away from the street. Defendant's hands were in front of him at his groin area, and his shoulders were bent over. After the officer turned his patrol car around and drove back down the road to the parking lot, he saw fluid flowing from the location where Defendant had been standing and toward the street. He testified that the fluid could not have come from the car wash.

The officer's observations provided him with reasonable suspicion that Defendant was urinating in public and thus committing the offense of public indecency.

Although Defendant asserts that the State failed to establish that the officer saw the fluid before initiating his blue lights, the trial court accredited the officer's testimony that he saw the puddle of liquid before initiating his blue lights. It is well settled that "'credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). The evidence does not preponderate against the trial court's findings that the officer observed the puddle of liquid before activating his blue lights.

Defendant relies upon this court's opinion in *State v. Steven Daniel Pack* in which this court held that the police officer had reasonable suspicion that the defendant had violated the law through indecent exposure and public urination because the officer saw the defendant exit his vehicle and urinate on a public road and the officer stated that the defendant's genitals were exposed. *See State v. Steven Daniel Pack*, No. M2010-02465-CCA-R3-CD, 2011 WL 3107730, at *3 (Tenn. Crim. App. July 26, 2011). Defendant argues that unlike the officer in *Steven Daniel Pack*, the officer in the present case did not actually see Defendant urinating or Defendant's genitals before initiating the seizure. *Steven Daniel Pack*, however, does not stand for the proposition that an officer must actually see a defendant urinating or a defendant's genitals in order to establish reasonable suspicion that a defendant is committing public indecency through public urination. We note that while the exposure of genitals is an element of indecent exposure as it relates to the defendant in *Steven Daniel Pack*, the offense of public indecency does not include such an element. *See* T.C.A. §§ 39-13-511(a)(1)(A)(i)(a); 39-13-517(b)(3).

Rather, we conclude that based upon the officer's observations, he had reasonable suspicion that Defendant was committing public indecency through public urination. Accordingly, the seizure was constitutional.

## CONCLUSION

After reviewing the record and the applicable law, we affirm the trial court's denial of Defendant's motion to suppress.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

- 6 -